IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:24-cv-02646-E-BT |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Justin M.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. Compl., ECF No. 1. For the reasons explained below, the Magistrate Judge recommends that the Court AFFIRM the Commissioner's decision.[2]

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] This case was automatically referred to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Special Order No. 3-350. Plaintiff did not consent to the undersigned exercising the court's full jurisdiction over this case. *See* ECF No. 6. Accordingly, this case was reassigned to a United States District Judge for the Northern District of Texas and referred to the undersigned per Special Order 3 for findings of fact, conclusions of law, and a recommendation for the disposition of the case.

## Background

Plaintiff alleges that he is disabled due to ulcerative colitis, autism spectrum disorder, and anxiety. Admin. R. 256 (ECF No. 13-1).[3] Plaintiff was born on August 5, 2001, and has a high school education. Admin. R. 30, 227, 234, 257. He has no past relevant work experience. Admin. R. 30.

Plaintiff filed concurrent applications for Title II Child Disability Benefits and Title XVI Supplemental Security Income (SSI) on December 10, 2021, alleging a disability onset date of August 5, 2001. Admin. R. 227, 234. The claims were denied initially and upon reconsideration. Admin. R. 106, 116, 127, 135. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on May 2, 2024. Admin. R. 37.

The ALJ found Plaintiff was not disabled and thus not entitled to benefits. Admin. R. 31. Utilizing the five-step sequential evaluation,[4] the ALJ first found that

---

[3] Citations to the record refer to the CM/ECF page numbers at the top of each page rather than page numbers at the bottom of each filing.

[4] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d

Plaintiff had engaged in substantial gainful activity from September 2023 to the date of his decision. Admin. R. 22-23. But the ALJ continued with the sequential evaluation because he determined that Plaintiff did not engage in substantial gainful activity prior to September 25, 2023. Admin. R. 22-23. The ALJ stated that his remaining findings "address[ed] the period the claimant did not engage in substantial gainful activity." Admin. R. 23. At the second step, the ALJ noted that Plaintiff experienced severe impairments of "ulcerative colitis, autism spectrum disorder, an anxiety disorder, a depressive disorder, and an attention deficit hyperactivity disorder." Admin. R. 23. At the third step, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal any listed impairment in appendix 1 of the social security regulations. Admin. R. 25.

Next, the ALJ conducted a residual functional capacity (RFC) assessment. He found that Plaintiff has the RFC "to perform medium work . . . except that he can only have occasional interactions with the general public that is superficial and incidental to the work performed (e.g. no customer service)." Admin. R. 26-27.

Finally, relying on the testimony of a vocational expert, the ALJ determined that Plaintiff had the ability to perform the jobs of hand packager, warehouse worker, and laundry worker, and that such jobs existed in significant numbers in the national economy. Admin. R. 30. Therefore, the ALJ found that Plaintiff was

---

55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

not disabled under the Social Security Act and not entitled to Child Disability Benefits or SSI. Admin. R. 31.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 222-223. The Appeals Council found that the appeal did not provide a basis for modifying the ALJ's decision. Admin. R. 6-9. Plaintiff then filed this action in federal district court.

**Legal Standard**

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are

4

conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

**Analysis**

On appeal, Plaintiff raises two arguments. First, he contends that the ALJ's RFC assessment is not supported by substantial evidence because, although he found Plaintiff's ulcerative colitis to be a severe impairment, he failed to account for limitations from Plaintiff's ulcerative colitis in his RFC assessment. Pl.'s Br. 11-13, ECF No. 17-2. Second, he contends that the ALJ erred in failing to evaluate whether he was disabled for a closed period lasting at least 12 months following his alleged onset date because the ALJ improperly relied on his functioning during the

5

period after he returned to work. *Id. at* 14-16. For the reasons set forth below, the Court finds Plaintiff's arguments lack merit, and the ALJ's decision should therefore be affirmed.

### 1. The ALJ's RFC assessment is supported by substantial evidence.

The Court first addresses Plaintiff's argument that the ALJ assessed his ulcerative colitis as severe at step two and then committed error by not assigning a limitation for this condition in the RFC. *See* Pl.'s Br. 11-13. Plaintiff notes that the only limitations in the RFC are that Plaintiff is restricted to "medium-level work (i.e., lifting 50 pounds occasionally and 25 pounds frequently) and that he must have limited contact with the general public." *Id.* at 2. Plaintiff contends that "[n]either of these limitations, on their face, is rationally related to the Plaintiff's ulcerative colitis and the symptoms resulting from that condition." *Id.* He also maintains that "the ALJ did not provide any suitable explanation in the RFC narrative to explain how the assessed limitations would account for Plaintiff's gastrointestinal disorder." *Id.*

The Commissioner responds this was not error, as the consideration at step two of whether a condition is severe is different than the RFC inquiry. Def.'s Resp. Br. 7, ECF No. 22. The Commissioner contends that "Plaintiff's argument ignores the ALJ's discussion of that impairment in his RFC analysis in which the ALJ explained that although Plaintiff was diagnosed with ulcerative colitis in January 2020, that impairment quickly improved with treatment (Tr. 23)." *Id.* at 4. According to the Commissioner, "the ALJ thoroughly considered Plaintiff's

6

medical records, including explaining that Plaintiff's medication successfully controlled his ulcerative colitis, and those records provide substantial evidence supporting the ALJ's RFC assessment." *Id.* at 1. The Commissioner asserts that "[t]he ALJ further supported his assessment of Plaintiff's ulcerative colitis when he discussed, and found persuasive, the prior administrative medical findings of Patty Rowley, M.D., and Gary Smith, M.D.," both of whom found ulcerative colitis was a severe impairment, but concluded that Plaintiff could still perform medium work, despite the ulcerative colitis. *Id.* at 6.

"Determining a [plaintiff's RFC] is the ALJ's responsibility, and [the ALJ] has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam). Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. Appx 395, 402 n.4 (5th Cir. 2018) (citation omitted). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

The purpose of assessing a claimant's RFC is to determine the work that can be done despite present limitations. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam); 20 C.F.R. § 404.1545(a)(1). The RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by

7

physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hill*, 2020 WL 6370168, at *6 (cleaned up) (quoting *Hollis v. Bowen*, 837 F. 2d 1378, 1386-87 (5th Cir. 1988) (per curiam)). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. at § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

On the one hand, courts have found that when impairments are identified as severe at step two, but an RFC does not include any limitations for those impairments, the RFC in effect contradicts the step two finding. *See, e.g.*, *Spears v. Barnhart*, 284 F. Supp. 2d 477, 483 (S.D. Tex. 2002) (noting that by failing to include any limitations, the ALJ "basically contradict[ed] the fact that he found [the claimant's] impairments to be severe"); *Norman v. Astrue*, 2011 WL 2884894, at *6 (W.D. Tex. July 18, 2011) ("Similar to *Spears*, here the ALJ did not include any limitations resulting from the [impairment], contradicting his own finding that the [impairment] was 'severe.'"). Some federal court in Texas have held that such an inconsistency warrants remand. *See, e.g.*, *Spears*, 284 F. Supp. 2d at 483-84 (finding the ALJ's failure to address the claimant's limitations related to her severe impairment was error that warranted remand); *Norman*, 2011 WL 2884894, at *6 (finding remand was warranted where the ALJ found the claimant's limitation was

8

severe at step two, but failed to include any limitation resulting from the impairment in his RFC analysis); *Martinez v. Astrue*, 2011 WL 4128837, at *5-7 (N.D. Tex. Sept. 15, 2011), *adopted by* 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011) (same).

In *Martinez*, for instance, the ALJ failed to include limitations from the plaintiff's hand surgery in the RFC despite finding that the hand surgery was a severe impairment. 2011 WL 4128837, at *5-6. The court remanded the case because it was unable to determine whether the ALJ intended the hand surgery to be a severe impairment, and if so, whether the RFC should have included certain limitations relating to it. *Id.* at *7. The court explained that if the RFC should have included those limitations, then the ALJ was required to seek additional testimony from the VE as to whether the plaintiff could still perform the jobs identified by the VE. *Id.*

On the other hand, "several Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation to that impairment in his RFC assessment." *Walker v. Colvin*, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (Ramirez, J.) (collecting cases and discussing the split in authority among Texas federal courts on this issue). The Fifth Circuit has held "[t]he ALJ's finding that [the plaintiff] had 'a combination of impairments that is severe' did not foreclose a finding that [the plaintiff] had a residual functional capacity to perform a range of light work[] and is not necessarily inconsistent with that finding." *See Boyd v. Apfel*, 239 F.3d 698, 706

9

(5th Cir. 2001) (quoting 20 C.F.R. § 404.1520a(c)(2))[5]; *see also Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) ("A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Rivera v. Comm'r of Soc. Sec.*, 2021 WL 7906837, at *1 (E.D. Tex. Nov. 22, 2021) (citing *Walker*, 2015 WL 5836263, at *15) ("[A] court may find that an impairment is severe; however, that does not necessarily mean that the impairment must result in limitations in the RFC."); *Quigley v. Astrue*, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010) (noting that step two and the RFC determination are different inquiries), *adopted by* 2011 WL 61630 (N.D. Tex. Jan. 5, 2011).

In those instances where courts have found that an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the ALJs considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding. *See, e.g.*, *Gonzalez v. Colvin*, 2014 WL 61171, at *6-7 (N.D. Tex. Jan. 6, 2014) (finding the ALJ's decision was not subject to reversal where he did not set forth specific limitations in his RFC determination

---

[5] In *Spears, supra*, the court found that "[t]he ALJ, however, did not include any limitations—basically contradicting the fact that he found her impairments to be severe." *Spears*, 284 F. Supp. 2d at 483. *Spears* does not cite any authority for this proposition. As explained in *Boyd*, a finding of severity at step two does not preclude a finding at step five that a claimant can still work, despite the severe impairment. *See Boyd*, 239 F.3d at 706.

relating only to the claimant's severe impairment but found other limitations that took into account the claimant's severe impairment); *Carnley v. Colvin*, 2013 WL 5300674, at *9 (N.D. Tex. Sept. 20, 2013) (finding that although the ALJ erred by finding claimant's seizure disorder to be a severe impairment and failing to incorporate limitations from the disorder into the RFC, it was clear he intended to include seizure limitations because the hypothetical questions posed to the VE at the hearing included such limitations, thereby negating need to remand the case); *Scott v. Colvin*, 2013 WL 6047555, at *11 (S.D. Tex. Nov. 14, 2013) (finding that the ALJ "fully addressed the impact of [the claimant's severe impairment] on her ability to do sustained work activities"). The ALJ must clearly consider the severe impairments in determining the claimant's RFC, not necessarily assess limitations for each severe impairment. *See, e.g.*, *Campbell v. Berryhill*, 2017 WL 1102797, at *12 (N.D. Tex. Feb. 24, 2017) (finding error where "the ALJ expressly found that Plaintiff's deep vein thrombosis was one of twelve severe impairments at step two, but [ ] did not *expressly address* what impact, if any, it had in determining Plaintiff's RFC") (emphasis added), *adopted by* 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017).

In the instant case, the ALJ found that Plaintiff had numerous severe impairments, including the severe impairment of ulcerative colitis based on the medical evidence. Admin. R. 23-24. After finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations, the ALJ found that

11

Plaintiff had the RFC "to perform medium work . . . except that he can only have occasional interactions with the general public that is superficial and incidental to the work performed (e.g. no customer service)." Admin. R. 26-27.

In making this finding, the ALJ expressly considered evidence of Plaintiff's severe ulcerative colitis, noting that it was diagnosed in January 2020 during a hospitalization related to intermittent abdominal pain and weakness. Admin. R. 23, 28 (citing Exhibits 2F/1-2; 3F/13). The ALJ detailed that, following his initial diagnosis, Plaintiff received treatment with medication, beginning Humira in May 2020. Admin. R. 23, 28 (citing Exhibits 5F/3; 8F/5, 15-16). The ALJ highlighted that Plaintiff subsequently demonstrated significant improvement with medication, reporting he was having only 1-2 bowel movements a day with no blood in his stool or abdominal pain and that his appetite improved. Admin. R. 23, 28 (citing Exhibits 5F/3, 29, 32; 8F/24; 9F/4; 13F/6-7; 17F/7).

The ALJ outlined that Plaintiff's subsequent treatment records continued to document good control and Plaintiff even reported he was asymptomatic by September 2020. Admin. R. 23, 28. The ALJ highlighted that Plaintiff generally denied abdominal pain and rectal bleeding while reporting good appetite and normal bowel movements. Admin. R. 28 (Exhibits 5F/3, 29, 32; 8F/24; 9F/4; 13F/6, 7; 17F/7). He noted that Plaintiff's treatment providers continued to document that his ulcerative colitis was in clinical remission and his examination findings were normal. Admin. R. 28 (citing Exhibits 5F/6, 31, 86; 6F/10-11, 14-15; 8F/18; 9F/4; 10F/4; 12F/16-17; 13F/6; 14F/6, 8; 17F/7). Examination findings are

relevant and substantial evidence supporting the RFC assessment. *See Britton v. Saul*, 827 F. App'x 426, 429 (5th Cir. 2020).

Further, the ALJ noted that in August 2021, Plaintiff reported he was going to the gym three times a week (Exhibit 6F/10). Admin. R. 28 (citing Exhibit 6F/10). *See Reyes v. Sullivan*, 915 F.2d 151, 154-55 (5th Cir. 1990) (recognizing that a claimant's daily activities are relevant in assessing subjective complaints). The ALJ also observed that "there is no evidence of any hospitalizations or reports of symptoms indicative of flareup since his initial hospitalizations, which is inconsistent with his testimony (Hearing Testimony)." Admin. R. 28.

The ALJ further supported his assessment of Plaintiff's ulcerative colitis in his RFC analysis when he discussed the prior administrative medical findings of the state agency medical consultants (SAMCs) and determined those findings were persuasive. Admin. R. 29 (citing Exhibits 3A; 4A; 7A; 8A). *See* 20 C.F.R. §§ 404.1513(a)(5), 404.1520c, 416.913(a)(5), 416.920c. Both SAMCs independently reviewed the file and found ulcerative colitis was a severe impairment. Admin. R. 67-68, 83-84. Both SAMCs found that, despite Plaintiff's ulcerative colitis, he could perform "medium work," consistent with the ALJ's RFC assessment. Admin. R. 70-71, 86-88. The ALJ determined these medical findings were persuasive because the SAMCs' review supported their findings, and their findings were consistent with the record. Admin. R. 29. The ALJ's discussion of these prior administrative medical findings provides further support for his evaluation of Plaintiff's ulcerative colitis and RFC assessment. *See* 20 C.F.R. §§ 404.1520c, 416.920c; SSR 17-2p, 2017

WL 3928306 (State agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act.").

After considering the evidence of record, and Plaintiff's allegations, the ALJ found his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found his statements "concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record . . . ." Admin. R. 28. This finding also informs the ALJ's ultimate RFC assessment. *See, e.g.*, *Vasquez v. O'Malley*, 2024 WL 1481437, at *7 (W.D. Tex. Feb. 21, 2024), *adopted by* 2024 WL 1195558 (W.D. Tex. Mar. 19, 2024), *aff'd*, 2024 WL 4381269 (5th Cir. Oct. 3, 2024) (ALJ did not err in finding severe digestive impairments at step two and not attributing any limitation to those impairments in the RFC assessment where he considered medical evidence and Plaintiff's testimony, but found the statements "concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record").

In this case, the ALJ thoroughly considered Plaintiff's medical records, including explaining that Plaintiff's medication successfully controlled his ulcerative colitis, and those records provide substantial evidence supporting the ALJ's RFC assessment. In addition, he found persuasive the prior administrative medical findings of the SAMCs, both of whom considered Plaintiff's ulcerative

14

colitis severe but found he could perform medium work. Admin. R. 28, 67-68, 70-71, 83-84, 86-88.

Here, unlike in cases like *Martinez*, the ALJ made clear that he considered the ulcerative colitis "severe" at step two, considered the medical impairments from step two when he made the RFC determination, and assessed Plaintiff's limitations based on their impact on his actual ability to do work. Therefore, there is no inconsistency between the ALJ's step two findings and his RFC determination.

Plaintiff's attempt to highlight countervailing evidence that would favor additional limitations, *see* Pl.'s Br. 12, merely invites the Court to reweigh the evidence, which it declines to do. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (A reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination.).

In sum, the ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence because the ALJ considered Plaintiff's medical impairments when he made the RFC determination and assessed Plaintiff's limitations based on their impact on his actual ability to work.

### 2. The ALJ did not err in considering evidence from after September 25, 2023.

Plaintiff contends that because the ALJ determined he engaged in substantial gainful activity starting on September 25, 2023, the ALJ was prohibited

15

from considering evidence after that date to assess his RFC. Pl.'s Br. 14-16. Specifically, Plaintiff notes that in evaluating the objective evidence, the ALJ referenced Exhibits 16F and 17F which contain medical findings from 2024. *Id.* at 15. And, Plaintiff states, the ALJ made specific references to Plaintiff's activities after September 2023. *Id.* In response, the Commissioner argues that "[t]here is simply no support for [Plaintiff's] proposition." Def.'s Resp. Br. 8. The Commissioner further contends that "even if there were such a prohibition, the facts of this case easily justify the ALJ considering evidence from the period that Plaintiff engaged in substantial gainful activity." *Id.*

As an initial matter, as the Commissioner correctly notes, *see* Def.'s Resp. Br. 8, the Fifth Circuit has explained that evidence that postdates the adjudicated period can be relevant. *See McLendon v. Barnhart,* 184 F. App'x 430, 432 (5th Cir. 2006) (noting that the claimant's "activities subsequent to the date last insured, while not always monetarily remunerated, belie his subjective contention that he was disabled prior to that date"); *see also Fraga v. Bowen,* 810 F.2d 1296, 1305 & n.11 (5th Cir. 1987) (ability to work despite pre-existing condition supports ALJ's finding of not disabled).

Here, Plaintiff did not argue he was disabled for only a specific period of time; he alleged that he was disabled throughout the entire period, even after the date he was able to engage in substantial gainful activity. For instance, during the administrative hearing, Plaintiff's representative posited that Plaintiff's work activity was accommodated and did not qualify as substantial gainful activity.

16

Admin. R. 42. Further, Plaintiff stated that he started working because he was "rotting away, doing nothing," Admin. R. 45, not because he experienced improvement in his symptoms that allowed him to engage in greater work activity. He also testified at the administrative hearing that limitations from his physical and mental impairments were ongoing. Admin. R. 47-55. At no point did he assert that that records from after September 2023 reflected greater functional capacity than during the prior period. Thus, as the ALJ explained, that Plaintiff was able to engage in fulltime substantial gainful activity with his allegedly disabling impairments supports the ALJ's decision. Admin. R. 29.

Finally, even were the Court to assume that the ALJ should have ignored evidence from after September 2023, the Court agrees with the Commissioner that "Plaintiff's argument would still fail because the record from prior to that date, as the ALJ thoroughly discussed, provides substantial evidence supporting the ALJ's RFC assessment." Def.'s Resp. Br. 9. For example, the ALJ's citation to Exhibits 16F and 17F in considering the objective medical evidence was redundant of the majority of exhibits to which he cited from the period preceding September 25, 2023. Here, Plaintiff has failed to show that the ALJ overly relied on evidence from after the day he engaged in substantial gainful activity.

## Recommendation

For the reasons stated, the Court should AFFIRM the Commissioner's decision.

17

**SO RECOMMENDED.**

August 4, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).